IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONNIE ROY,

      Plaintiff,                                   No. CIV S-08-0689 DAD

     v.

MICHAEL J. ASTRUE,                   <u>ORDER</u>
Commissioner of Social Security,

      Defendant.
_____/

       This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

       On August 19, 2004, plaintiff applied for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act), alleging disability beginning May 1,

/////

/////

/////

1

2003.[1]  (Transcript (Tr.) at 10.)  The application was denied initially on February 11, 2005, and upon reconsideration on September 21, 2005.  (Id.)  Plaintiff filed an untimely request for a hearing but established good cause for the late filing based upon her incarceration in state prison.[2]  (Tr. at 28-31.)  The agency lost plaintiff's file and reconstructed it to the extent possible.  (Tr. at 10, 99.)  A hearing was held before an administrative law judge (ALJ) on May 2, 2007, at which plaintiff was represented by Bruce Hagel, Esq.  (Tr. at 180-218.)  Plaintiff testified briefly at the hearing.  (Id.)  In a decision dated September 5, 2007, the ALJ determined that plaintiff had not been disabled since August 19, 2004, the date of her application for SSI.  (Tr. at 10-18.)  The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 19, 2004, the application date (20 CFR 416.920(b) and 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: chronic knee pain with mild osteoarthritis, back pain consistent with likely mild osteoarthritis, and obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, i.e., lift/carry 50 pounds occasionally and 25 pounds frequently, and sit, stand or walk for six hours in an eight-hour day.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on October 17, 1966 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

---

[1] Plaintiff had received SSI payments prior to January 2004.  (Tr. at 34.)  The document notifying plaintiff of the termination of benefits instructed her to contact the agency if she thought she might be eligible for SSI again but to file a new application if she did not contact the agency before June 2004.  (Tr. at 34-35.)

[2] Plaintiff was incarcerated from September 10, 2005 to February 7, 2006.  (Tr. at 30.)

2

    7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

    8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

    9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

    10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2004, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 12-18.)

On September 26, 2007, plaintiff requested review of the ALJ's decision. (Tr. at 6.) The Appeals Council denied the request on February 7, 2008. (Tr. at 3-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 1, 2008.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760

F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances the following arguments in support of her motion for summary judgment:  (1) the ALJ failed to adequately assess all of plaintiff's severe impairments at step two of the sequential evaluation process and as a result failed to properly assess plaintiff's residual functional capacity; and (2) the ALJ erred in utilizing the grids instead of securing the testimony of a vocational expert.  These arguments are addressed below.

At step two of the sequential evaluation process, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  Under the Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."[3]  20 C.F.R. § 416.921(a).  The severity regulation serves to "identify[] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153.  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'"  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001).  "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290, and adding emphasis).

---

[3] Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b).

5

1    Here, the ALJ found that plaintiff had only three impairments, all of them
2 physical: (1) chronic knee pain with mild osteoarthritis; (2) back pain consistent with likely mild
3 osteoarthritis; and (3) obesity. (Tr. at 12.) The ALJ considered other impairments, including
4 plaintiff's mental conditions, but apparently did not find them to be severe. (Tr. at 12-14.)
5    Plaintiff argues that the ALJ erred at step two of the sequential evaluation by
6 completely discounting her mental conditions (including diagnosed Bipolar Disorder, Post
7 Traumatic Stress Disorder (PTSD) and depression) as severe impairments. Plaintiff argues that
8 the medical evidence of record documented these impairments, the symptoms suffered by
9 plaintiff as a result thereof and the fact that plaintiff had been treated and prescribed psychotropic
10 medications for them. The Commissioner counters, arguing that plaintiff failed to produce any
11 evidence of functional limitations resulting from any mental impairment. In this regard, the
12 Commissioner contends that the licensed clinical social worker who saw plaintiff at the
13 California Department of Corrections and Rehabilitation (CDCR) Parole Outpatient Clinic
14 following plaintiff's release from prison is not an acceptable medical source whose opinion is
15 entitled to deference. The Commissioner notes that the consultative examiner found that plaintiff
16 was malingering when it came to her mental testing. Finally, the Commissioner contends that
17 any error was harmless because although the ALJ found plaintiff's mental impairments to be
18 non-severe, the ALJ continued to consider plaintiff's claims of mental impairment throughout the
19 sequential evaluation.
20    As was noted by both the ALJ and plaintiff's attorney at the administrative
21 hearing, there was very little evidence in the record. (Tr. at 186, 207-10, 213-16.)[4] However,
22 what evidence there was in the record strongly suggested that plaintiff suffered from a severe

---

[4] This may have been attributable in part to the fact that the agency had lost plaintiff's file containing her prior applications and reconstructed it to the extent possible. (Tr. at 10, 186.) It may also be that the medical evidence was scarce because plaintiff had been treated for her mental condition only by medical staff in state prison and, following her release, by the CDCR Parole Outpatient Clinic and County Mental Health Clinic.

mental impairment that would be expected to have more than a minimal effect on her ability to work. In this regard, the record reflects that when released from prison, plaintiff was being treated by the CDCR Parole Outpatient Clinic[5], and by Sacramento County Mental Health and was being prescribed Resperdal, Trazodone and Zoloft. (Tr. at 50, 57-58, 65, and 70.) Other records suggest that at points in time since the alleged onset date, plaintiff has been prescribed Seroquel, Zyprexa, and Paxil. (Tr. at 103, 105, 107 and 115).[6] There is a suggestion in the record that in September of 2002, plaintiff was treated by Sacramento County Mental Health pursuant to a § 5150 hold after she was found crying in the middle of a five-lane highway saying she wanted to die. (Tr. at 103.) Throughout the minimal record there are references to plaintiff reporting that she suffers from (or was being treated for) bipolar disorder, post-traumatic stress syndrome, antisocial personality disorder and depression.

   Because of the paucity of the record with respect to both plaintiff's physical and mental impairments, the ALJ ordered complete internal medicine and psychological evaluations. (Tr. at 213-17.) The psychological evaluation was conducted on June 4, 2007, by David C. Richwerger, Ed.D. He administered a battery of mental status tests to plaintiff but found all of those test results invalid because, based upon her score on the Test of Memory Malingering, he concluded that plaintiff was giving a malingered level of effort. (Tr. at 176-78.) Accordingly, Dr. Richwerger's diagnostic impression was " Axis I: Malingering. Bipolar I Disorder, by history given. Post Traumatic Stress Disorder, by history given." (Tr. at 178.) He merely concluded that "No valid MSS can be stated as test results are a significant underestimate of the

---

[5] It appears that at the CDCR Parole Outpatient Clinic plaintiff was being treated by a psychiatrist, Dr. Nighat Zaka, and Lee B. Maxey, a Licensed Clinical Social Worker (LCSW). (Tr. at 115-121.)

[6] Paxil and Zoloft are both indicated for the treatment of depression, obsessive compulsive disorder and panic disorder. See Physicians' Desk Reference 2852, 2230 (52d ed. 1998). Risperdal and Zyprexa are both indicated for the management of the manifestations of psychotic disorders. Id. at 1310, 1512. Trazodone is another antidepressant. Id. at 518. Seroquel is used to treat those suffering from Bipolar Disorder, acute depressive or manic episodes and schizophrenia.

claimant's actual cognitive ability due to the performance consistent with a malingered level of effort." (Id.)  He did not, however, address the medications that had been prescribed for plaintiff by psychiatrists at the CDCR Parole Outpatient Clinic.

Based on this limited record the ALJ, apparently influenced by the evaluation indicating a malingered effort, found at step two that plaintiff did not suffer from any severe mental impairment.  The court finds that the ALJ did not properly apply the law in reaching this conclusion.  In this regard, and as noted above, there is evidence in the record of plaintiff's mental impairments during the relevant time.  She had been institutionalized involuntarily for a period of time at least once because of her mental state and had been prescribed medications used to treat depression, psychotic disorders, Bipolar Disorder, acute depressive or manic episodes and schizophrenia by CDCR psychiatrists, apparently both in and out of prison.[7]  While the psychological evaluator on June 4, 2007, found that plaintiff gave a malingered effort, the court nonetheless finds that the medical evidence does not clearly establish that plaintiff's mental impairments were slight abnormalities having no more than a minimal effect on her ability to work.

In reaching this conclusion, the undersigned is mindful that the step-two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  The court has also taken into account the ALJ's duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  See also 20 C.F.R. §§ 404.1512(e). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully develop the record.  Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992).  See De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop

---

[7] Certainly it is the court's experience that prison medical staffs do not prescribe such medications without reason.

8

the record is present even if the claimant is represented by counsel, and the duty is especially important in cases involving alleged mental impairments); Brown, 713 F.2d at 443 (where the ALJ feels that more evidence, or more reliable evidence, is necessary, the ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel). The ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). This was just such a case. Although obtaining the psychological evaluation was certainly a step in the right direction, the opinion obtained did not render the record adequate for proper consideration of the evidence at step two of the sequential evaluation. The ALJ's decision is therefore not supported by substantial evidence in the record as a whole. See Schneider, 223 F.3d at 973; Morgan, 169 F.3d at 599.

## CONCLUSION

The court finds that remand is required so that the ALJ can fully develop the record with respect to plaintiff's mental impairments, if any. In light of the remand required by the ALJ's error at step two, the court need not address plaintiff's remaining arguments. See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal. 2000). Moreover, as noted above, the record is not sufficiently developed for consideration of those arguments going beyond step two in any event. Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994).

On remand, the ALJ shall develop the record with respect to plaintiff's mental impairments and the functional limitations arising from those impairments, if any. The ALJ shall reconsider whether plaintiff's mental impairments, if any, meet the requirements of any relevant listed impairment. If plaintiff's impairments do not meet or equal any listing, the ALJ shall determine whether those impairments, if any, are nonetheless severe and, if so, determine plaintiff's residual functional capacity in light of all of her impairments and the entire record. If it is found that plaintiff does suffer from a severe mental impairment that significantly limits her ability to work and the sequential evaluation proceeds to step five, the ALJ shall hold a hearing at

which plaintiff is permitted to testify and hypothetical questions are presented to a vocational expert in a manner that properly takes into account all of the limitations on plaintiff's ability to engage in work-related functions.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 20) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 21) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: September 24, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.socsec/roy0689.order